IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| Neo Wireless LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>General Motors Company & General Motors LLC<br><br>*Defendants.* | Civil Action No. 2:22-cv-00094<br><br>**JURY TRIAL DEMANDED** |

### PLAINTIFF NEO WIRELESS LLC'S
### COMPLAINT FOR PATENT INFRINGEMENT

Neo Wireless LLC ("Neo Wireless," "Neo," or "Plaintiff"), brings this action for patent infringement under 35 U.S.C. § 271 against Defendants General Motors Company and General Motors LLC (collectively, "GM," "GM Defendants," or "Defendants"). Plaintiff alleges, based upon its own personal knowledge with respect to its own actions and based upon information and belief with respect to all others' actions, as follows:

### THE PARTIES

1. Plaintiff Neo Wireless LLC is a Delaware corporation with its principal place of business located in Wayne, Pennsylvania.

2. On information and belief, Defendant General Motors Company ("GMC") is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 300 Renaissance Center in Detroit, Michigan. GMC may be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE, 19808.

1

3. Defendant General Motors LLC ("GM LLC") is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 300 Renaissance Center in Detroit, Michigan. GM LLC may be served through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, TX 78701-4234.

## JURISDICTION AND VENUE

4. This action includes a claim of patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

5. Subject matter jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 1338(a).

6. Venue in this District is proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b) against Defendants because, on information and belief, each GM Defendant (1) has committed acts of infringement in this District and (2) has a regular and established place of business in this District.

7. This Court has personal jurisdiction over GM. On information and belief, GM LLC is a wholly owned subsidiary of GMC. Defendants have continuous and systematic business contacts with the State of Texas. Specifically, Defendants conduct business and has committed acts of patent infringement and has induced acts of patent infringement by others in this District, the State of Texas, and elsewhere in the United States. Defendants, directly and through subsidiaries or intermediaries, have committed and continue to commit acts of infringement in this District by, among other things, designing, developing, manufacturing, importing, offering to sell, and selling products that infringe the asserted patents.

8. Defendants do and intend to do business in Texas and in this District, directly or through intermediaries, and offer their products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas and in this District.

9. Defendants, both directly and through their subsidiaries or intermediaries (including distributors, retailers, and others), have purposefully and voluntarily placed one or more infringing products and/or services, as described below, into the stream of commerce with the expectation that those products will be purchased and used by customers and/or consumers in the Eastern District of Texas.

10. Defendants maintain facilities throughout the state of Texas, including at least the Austin IT Innovation Center at 13201 McCallen Pass, Austin, TX 78753; an automotive assembly factory at 2525 E Abram St., Arlington, TX 76010;[1] a customer engagement center at 7401 E Ben White Blvd., Austin, TX 78741;[2] the South Central Regional Office at 545 E John W Carpenter Fwy, Irving, TX 75062;[3] the GM Financial Headquarters at 801 Cherry St., Fort Worth, TX 76102;[4] the GM Financial San Antonio Customer Service Center at 3302 N Ellison Dr., San Antonio, Texas 78251[5], and the Fort Worth Parts Distribution Center at 301 Freedom Drive, Roanoke, Texas 76262[6].

---

[1] *See* https://media.gm.com/media/us/en/gm/company_info/facilities/assembly/arlington.html.

[2] *See* https://www.austincontactcenter.org/event-2529266.

[3] *See* https://www.gm.com/.

[4] *See* https://www.gmfinancial.com/en-us/home.html.

[5] *See* https://www.gmfinancial.com/en-us/home.html.

[6] *See* https://media.gm.com/media/us/en/gm/company_info/facilities/cca/fortworth.html.

11. Defendants' Austin Innovation Center employs more than 2,600 employees[7] including innovation excellence teams responsible for GM's technological improvements.

12. Defendants employ Software Developers and Engineers working on GM's 4G LTE capabilities, myGMC application development, hotspot capabilities, and other activities related to the making, using, offering for sale, or selling of GM's Accused Products in the United States.[8] For example, GM currently has job postings seeking a Senior Software Developer for the Austin IT Innovation Center who would serve as a Connected Ecosystem Integration employee. This developer is responsible for working on GM's functionalities, including software development, support, data structures, and databases, enabled by the implementation of 4G LTE capabilities into GM's accused products.[9]

13. Defendants maintain at least one "facilit[y] in the Eastern District of Texas." Ex. 1. Indeed, Defendants have committed acts of infringement in this judicial district and maintains regular and established places of business in this district including the Fort Worth Parts Distribution Center located at 301 Freedom Drive, Roanoke, Texas 76262.[10]

14. These infringing products and/or services have been and continue to be made, used, sold, offered for sale, purchased, and/or imported by customers and/or consumers in the Eastern District of Texas.

---

[7] *See* https://www.bizjournals.com/austin/news/2018/06/21/cognitive-convergence-inside-gms-austin-tech.html.

[8] *See* https://search-careers.gm.com/jobs/job/senior-software-developer-austin-jr-000045613/; https://search-careers.gm.com/jobs/job/software-developer-austin-jr-000065859/; https://search-careers.gm.com/jobs/job/principal-software-architect-technology-innovation-excellence-austin-jr-000074956/; https://search-careers.gm.com/jobs/job/principal-cloud-architect-technology-innovation-excellence-austin-jr-000074958/.

[9] See https://search-careers.gm.com/jobs/job/senior-software-developer-austin-jr-000045613/.

[10] *See* https://www.gm.com/company/usa-operations/texas.

15. Defendants have placed the Accused Products into the stream of commerce by selling and/or offering to sell the Accused Products in the Eastern District of Texas, shipping Accused Products into the Eastern District of Texas, and/or shipping Accused Products knowing that those products would be shipped into the Eastern District of Texas.

## THE ASSERTED PATENTS

### I. The '366 Patent

16. On June 18, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,467,366 ("the '366 patent"), entitled "Methods and Apparatus for Random Access in Multi-Carrier Communication Systems." A copy of the '366 patent is attached as Exhibit 2.

17. The '366 patent issued from U.S. Patent Application 13/205,579, which was filed by Neocific Inc. on August 8, 2011 and was assigned from the inventors to Waltical Solutions, Inc. on April 8, 2005. The application was later assigned from Waltical Solutions, Inc. to Neocific, Inc. on December 14, 2005. The now-issued '366 patent was assigned from Neocific, Inc. to CFIP NCF LLC on November 22, 2019 before it was assigned to Neo Wireless LLC on January 23, 2020.

18. The '366 patent is valid and enforceable.

### II. The '908 Patent

19. On April 17, 2018, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,833,908 ("the '908 patent"), entitled "Channel Probing Signal for a Broadband Communication System." A copy of the '908 patent is attached as Exhibit 3.

20. The '908 patent issued from U.S. Patent Application 16/902,740, which was filed on June 16, 2020 by Neo Wireless LLC on behalf of the inventors.

21. The '908 patent is valid and enforceable.

**III.     The '941 Patent**

22.     On September 11, 2018, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,075,941 ("the '941 patent"), entitled "Methods and Apparatus for Multi-Carrier Communications With Adaptive Transmission and Feedback." A copy of the '941 patent is attached as Exhibit 4.

23.     The '941 patent issued from U.S. Patent Application 15/082,878, which filed by Neocific, Inc. on March 28, 2016. The now-issued '941 patent was assigned from Neocific, Inc. to CFIP NCF LLC on November 22, 2019 before it was assigned to Neo Wireless LLC on January 23, 2020.

24.     The '941 patent is valid and enforceable.

**IV.     The '450 Patent**

25.     On October 15, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,447,450 ("the '450 patent"), entitled "Method and System for Multi-Carrier Packet Communication with Reduced Overhead." A copy of the '450 patent is attached as Exhibit 5.

26.     The '450 patent issued from U.S. Patent Application 15/676,421, which was filed by Neocific, Inc. on August 14, 2017. The now-issued '450 patent was later assigned from Neocific, Inc. to CFIP NCF LLC on November 22, 2019 before it was assigned to Neo Wireless LLC on January 23, 2020.

27.     The '450 patent is valid and enforceable.

**V.     The '512 Patent**

28.     On March 30, 2021, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,965,512 ("the '512 patent"), entitled "Method and Apparatus

Using Cell-Specific and Common Pilot Subcarriers in multi-Carrier, Multi Cell Wireless Communication Networks." A copy of the '512 patent is attached as Exhibit 6.

29. The '512 patent issued from U.S. Patent Application 17/012,813, which was filed by Neo Wireless on September 4, 2020.

30. The '512 patent is valid and enforceable.

### VI. The '302 Patent

31. On September 8, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,771,302 ("the '302 patent"), entitled "Channel Probing Signal for a Broadband Communication System." A copy of the '302 patent is attached as Exhibit 7.

32. The '302 patent issued from U.S. Patent Application 15/953,950, which was filed on April 16, 2019 and was assigned from Neocific, Inc. to CFIP NCF LLC on November 22, 2019 before it was assigned to Neo Wireless LLC on January 23, 2020.

33. The '302 patent is valid and enforceable.

34. Neo Wireless owns all rights, title, and interest in and to each of the '366, '908, '941, '450, '512, and '302 patents (the "Patents-in-Suit") and possesses all rights of recovery.

## FACTUAL ALLEGATIONS

35. Inventor Xiaodong (Alex) Li, Ph.D. founded Neocific Inc. in the early 2000s to design, develop, and implement a new wireless communication system. He and his co-inventors had extensive experience with wireless communications systems, including the development of the Wi-Max standards, and a deep understanding of the flaws in existing systems at the time. The inventors saw an opportunity to create a new wireless communication system meant to address those flaws while incorporating cutting-edge Orthogonal Frequency-Division Multiple Access

7

(OFDMA) based technologies, and, starting in the 2004-2005 timeframe, they filed patents on the work.

36. Dr. Li served as the President and Founder of Neocific. Dr. Li obtained his Ph.D. in electrical engineering from the University of Washington, his M.S. from Shanghai Jiao Tong University, and his B.S. from Tsinghua University. Dr. Li has authored more than 30 journal and conference papers in wireless communications, video coding, and networking. He has been granted more than 100 U.S. and foreign patents.

37. Dr. Titus Lo, Ph.D. is a founding employee of Neocific. Dr. Lo obtained his Ph.D. in electrical engineering from McMaster University and his B.S. from the University of British Columbia. Dr. Lo has authored more than 30 technical papers in international peer-reviewed journals and presented more than 50 time at industry events. He has been granted more than 100 U.S. and foreign patents.

38. The inventions in the Patents-in-Suit relate to various improvements in OFDMA networks and corresponding user equipment, and those improvements have since been incorporated into the 3GPP standards for 4G/LTE and 5G/NR networks.

39. Neo Wireless owns all substantial right, title, and interest in the Patents-in-Suit, and holds the right to sue and recover damages for infringement thereof.

40. David Loo is the CEO of Plaintiff Neo Wireless. Mr. Loo works and resides in Wayne, Pennsylvania. Mr. Loo has over a decade of experience as a licensing executive and patent attorney with a well-established track record of assisting companies, inventors and patent holders to ensure they are fairly compensated for their inventions.

41. The wireless communication industry has been developing rapidly since Bell Labs developed the First Generation of modern commercial cellular technology in 1984. Multiple

wireless communication technologies designated by generations emerged and brought new capacities to people all over the world. In 2008, 3GPP created and finalized the LTE standards as an upgrade to 3G. The cellular industry recognized its major benefits, and virtually all cellular device manufacturers have embraced LTE as the next generation of commercial cellular technology and developed phones, hotspots, and other cellular-connectivity devices to utilize the 4G LTE technology.

42. In recent years, automakers have implemented this cellular communications technology into their vehicles. For example, telematics systems first debuted in 1996 through OnStar using analog cell networks, which allowed consumers to receive remote diagnostics, remotely unlock vehicles, and receive emergency services including aid after a collision. In 2007, 3G technology emerged bringing greater speed and capacity to these features allowing automakers to design more advanced functions.

43. When the technology emerged, GM began implementing the newest 4G LTE cellular technology into many of its products. 4G LTE technology provided for 10 times faster data speeds, increased responsiveness, and the ability to support voice and data connections simultaneously. 4G LTE connection further provides consumers with a variety of in-vehicle wi-fi hot spots and vast entertainment options. As a result, GM could better support a variety of wireless features including SOS emergency assistance, automatic collision notification, stolen vehicle tracking, roadside assistance, remote start, remote climate control adjustment, navigation map updates, live traffic data, and wi-fi hotspot, etc.

44. GM provides 4G LTE connectivity in its various products via the OnStar system integrated into the accused products.

45. Building on these 4G LTE capabilities, GM developed and utilizes the myGMC App that enables its customers to interact with their vehicles from their cellular devices, using the cellular connectivity of the vehicles. Features on the myGMC app include remote start, unlock and locking the vehicle, and monitor fuel levels and tire pressure.

46. GM models that implement 4g/LTE communications—including but not limited to the Blazer, Bolt, Equinox, Sierra, Cadillac XT5, and Encore models—as well as those that may in the future implement 4G/LTE or 5G/NR capabilities, are collectively referred to herein as the "Accused Products."

47. As described further below, the Asserted Patents read onto portions of the LTE or 4G/5G standards, which GM implements in its Accused Products.

48. GM does not have any rights to the Patents-in-Suit.

49. Neo Wireless has complied with 35 U.S.C. § 287. Neo Wireless does not make, offer for sale, or sell within the United States any patented article under the Asserted Patents. Additionally, to the extent it was necessary, Neo Wireless provided GM with actual notice of its infringement at least by the filing of this Complaint.

50. In the interest of providing detailed averments of infringement, Neo Wireless has identified below at least one claim per patent to demonstrate infringement. However, the selection of claims should not be considered limiting, and additional claims of the Patents-in-Suit (including method, system, and apparatus claims) that are infringed by the GM Defendants will be disclosed in compliance with the Court's rules related to infringement contentions.

## GM'S ACTS OF PATENT INFRINGEMENT

51. Neo Wireless incorporates by reference the preceding paragraphs as if fully set forth herein.

10

52. As set forth below, GM's Accused Products incorporate, without any license from Neo Wireless, 4G/LTE and/or 5G/NR technology protected by patents owned by Neo Wireless. Neo Wireless respectfully seeks relief from this Court for GM's infringement.

53. Each GM entity has directly infringed, and continues to directly infringe, the Asserted Patents under 35 U.S.C. § 271(a) by making, using, selling and/or offering to sell, in this District and elsewhere in the United States, and/or importing into this District and elsewhere in the United States, one or more of GM's Accused Products, that is, certain infringing vehicles outfitted with instrumentalities that infringe the Asserted Patents, as further described in detail in Counts I-VI *infra*.

54. On information and belief, GMC directly or by controlling the activities of its subsidiaries, makes, sells, offers for sale, uses, and imports the Accused Products in the United States. On information and belief, GM LLC engages in the designing, developing, testing, and manufacturing of the Accused Products sold, used, and offered for sale in the United States, as well as the sales the Accused Products.

55. Each GM entity has indirectly infringed the Asserted Patents under 35 U.S.C. § 271(b) by inducing infringement by others, such as its subsidiaries, dealerships, distributors, retailers, and end-user customers, by, for example, implementing the infringing features in its cellular-capable products, encouraging its users to take advantage of LTE and/or NR features within the United States, and/or instructing, dictating, or training its dealerships and customers to use the infringing features.

56. Similarly, GMC and GM LLC's advertising, sales, design, development and/or technical materials related to the 3GPP LTE/4G and/or 5G/NR standards associated with the GM Accused Products contained and continue to contain instructions, directions, suggestions, and/or

invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause its subsidiaries, distributors, retailers, dealerships, customers, and the public to directly infringe at least one claim of each of the Patents-in-Suit, either literally or under the doctrine of equivalents.

57. GM took the above actions intending to cause infringing acts by others.

58. GM received action notice of its infringement at least as early as the date of service of this Complaint. Therefore, each GM entity was or is now aware of the Asserted Patents or has willfully blinded itself as to the existence of the Asserted Patents and the Accused Products' infringement thereof.

59. Further, GM has made, used, sold, offered to sell, imported and/or encouraged the making, using, selling, offering to sell, or importing of GM's Accused Products despite knowing of an objectively high likelihood that its actions constituted infringement of the Asserted Patents at all times relevant to this suit. Alternatively, each GM entity subjectively believed there was a high probability that others would infringe the Asserted Patents but took deliberate steps to avoid confirming that it was actively inducing infringement by others.

60. For the reasons described above, GM's infringement of the Asserted Patents has been willful.

61. GM's acts of infringement has caused damage to Neo Wireless. Neo Wireless is entitled to recover from GM the damages incurred by Neo Wireless as a result of GM's wrongful acts.

**COUNT ONE: INFRINGEMENT OF THE '366 PATENT**

62. Plaintiff incorporates the allegations of all of the foregoing paragraphs as if fully restated herein.

63. As described above, each GM entity has infringed and continues to infringe the Asserted Patents by implementing and using 4G/LTE and/or 5G/NR cellular functionality in the Accused Products, and performing the acts of infringement described above.

64. Each of GM's Accused Products implements the portions of the 3GPP LTE standard specification that read on at least claim 1 of the '366 patent. *See* Exhibit 8.

65. GM's Accused Products therefore meet at least one claim of the '366 patent.

66. To the extent that GM releases any new version of GM's Accused Products, such instrumentalities will meet the claims of the '366 patent and infringe under 35 U.S.C. § 271(a)–(b) in ways analogous to GM's current infringement described above.

67. Neo Wireless has been damaged and continues to be damaged by GM's infringement of the '366 patent.

## COUNT TWO: INFRINGEMENT OF THE '908 PATENT

68. Neo Wireless incorporates the allegations of the foregoing paragraphs as if fully restated herein.

69. As described above, each GM entity has infringed and continues to infringe the Asserted Patents by implementing and using 4G/LTE and/or 5G/NR cellular functionality in the Accused Products, and performing the acts of infringement described above.

70. Each of GM's Accused Products implements the portions of the 3GPP LTE standard specification that read on at least claim 11 of the '908 patent. *See* Exhibit 9.

71. GM's Accused Products therefore meet at least one claim of the '908 patent.

72. To the extent that GM releases any new version of GM's Accused Products, such instrumentalities will meet the claims of the '908 patent and infringe under 35 U.S.C. § 271(a)-(b) in ways analogous to GM's current infringement described above.

73. Neo Wireless has been damaged and continues to be damaged by GM's infringement of the '908 patent.

## COUNT THREE: INFRINGEMENT OF THE '941 PATENT

74. Neo Wireless incorporates the allegations of the foregoing paragraphs as if fully restated herein.

75. As described above, each GM entity has infringed and continues to infringe the Asserted Patents by implementing and using 4G/LTE and/or 5G/NR cellular functionality in the Accused Products, and performing the acts of infringement described above.

76. Each of GM's Accused Products implements the portions of the 3GPP LTE standard specification that read on at least claim 13 of the '941 patent. *See* Exhibit 10.

77. GM's Accused Products therefore meet at least one claim of the '941 patent.

78. To the extent that GM releases any new version of GM's Accused Products, such instrumentalities will meet the claims of the '941 patent and infringe under 35 U.S.C. § 271(a)-(b) in ways analogous to GM's current infringement described above.

79. Neo Wireless has been damaged and continues to be damaged by GM's infringement of the '941 patent.

## COUNT FOUR: INFRINGEMENT OF THE '450 PATENT

80. Plaintiff incorporates the allegations of all of the foregoing paragraphs as if fully restated herein.

81. As described above, each GM entity has infringed and continues to infringe the Asserted Patents by implementing and using 4G/LTE and/or 5G/NR cellular functionality in the Accused Products, and performing the acts of infringement described above.

82. Each of GM's Accused Products implements the portions of the 3GPP LTE standard specification that read on at least claim 7 of the '450 patent. *See* Exhibit 11.

83. GM's Accused Products therefore meet at least one claim of the '450 patent.

84. To the extent that GM releases any new version of GM's Accused Products, such instrumentalities will meet the claims of the '450 patent and infringe under 35 U.S.C. § 271(a)–(b) in ways analogous to GM's current infringement described above.

85. Neo Wireless has been damaged and continues to be damaged by GM's infringement of the '450 patent.

## COUNT FIVE: INFRINGEMENT OF THE '512 PATENT

86. Plaintiff incorporates the allegations of all of the foregoing paragraphs as if fully restated herein.

87. As described above, each GM entity has infringed and continues to infringe the Asserted Patents by implementing and using 4G/LTE and/or 5G/NR cellular functionality in the Accused Products, and performing the acts of infringement described above.

88. Each of GM's Accused Products implements the portions of the 3GPP LTE standard specification that read on at least claim 15 of the '512 patent. *See* Exhibit 12.

89. GM's Accused Products therefore meet at least one claim of the '512 patent.

90. To the extent that GM releases any new version of GM's Accused Products, such instrumentalities will meet the claims of the '512 patent and infringe under 35 U.S.C. § 271(a)–(b) in ways analogous to GM's current infringement described above.

91. Neo Wireless has been damaged and continues to be damaged by GM's infringement of the '512 patent.

## COUNT SIX: INFRINGEMENT OF THE '302 PATENT

92. Plaintiff incorporates the allegations of all of the foregoing paragraphs as if fully restated herein.

93. As described above, each GM entity has infringed and continues to infringe the Asserted Patents by implementing and using 4G/LTE and/or 5G/NR cellular functionality in the Accused Products, and performing the acts of infringement described above.

94. Each of GM's Accused Products implements the portions of the 3GPP LTE standard specification that read on at least claim 23 of the '302 patent. *See* Exhibit 13.

95. GM's Accused Products therefore meet at least one claim of the '302 patent.

96. To the extent that GM releases any new version of GM's Accused Products, such instrumentalities will meet the claims of the '302 patent and infringe under 35 U.S.C. § 271(a)–(b) in ways analogous to GM's current infringement described above.

97. Neo Wireless has been damaged and continues to be damaged by GM's infringement of the '302 patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

   a. a judgment in favor of Plaintiff that Defendants have infringed, either literally and/or under the doctrine of equivalents, the Asserted Patents;

   b. a judgment that Defendants' infringement has been and is willful;

   c. a judgment and order requiring Defendants to pay Plaintiff its damages, costs, expenses, and any enhanced damages to which Plaintiff is entitled for Defendant's infringement;

   d. a judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to Plaintiff, including without limitation, pre-judgment and

      post-judgment interest;

e. a judgment and order requiring Defendants to pay ongoing royalties;

f. a judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Plaintiff its reasonable attorney fees against Defendants; and

g. any and all other relief as the Court may deem appropriate and just under the circumstances.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands trial by jury on all claims and issues so triable.

DATED: March 29, 2022                                Respectfully submitted,

                                                                  */s/ Jason D. Cassady*
                                                                  Bradley W. Caldwell
                                                                  Texas State Bar No. 24040630
                                                                  Email: bcaldwell@caldwellcc.com
                                                                  Jason D. Cassady
                                                                  Texas State Bar No. 24045625
                                                                  Email: jcassady@caldwellcc.com
                                                                  John Austin Curry
                                                                  Texas State Bar No. 24059636
                                                                  Email: acurry@caldwellcc.com
                                                                  **CALDWELL CASSADY CURRY P.C.**
                                                                  2121 N. Pearl St., Suite 1200
                                                                  Dallas, Texas 75201
                                                                  Telephone: (214) 888-4848
                                                                  Facsimile: (214) 888-4849

                                                                  T. John Ward, Jr.
                                                                  Texas State Bar No. 00794818
                                                                  Claire Abernathy Henry
                                                                  Texas State Bar No. 24053063
                                                                  Andrea L. Fair
                                                                  Texas State Bar No. 24078488
                                                                  **WARD, SMITH, & HILL PLLC**
                                                                  1507 Bill Owens Parkway
                                                                  Longview, Texas 75604

(903) 757-6400
(903) 757-2323 (fax)
jw@wsfirm.com
claire@wsfirm.com
andrea@wsfirm.com

**ATTORNEYS FOR PLAINTIFF NEO WIRELESS**